**TRINITY INDUSTRIES, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.**

No. 92–4017.

United States Court of Appeals, Sixth Circuit.

Argued June 22, 1993.

Decided Feb. 24, 1994.

---

Robert E. Rader, Jr. (argued and briefed), Rader, Smith, Campbell & Fisher, Dallas, TX, for petitioner.

Ray Darling, Secretary, OSHRC, Washington, DC, Charles F. James (argued and briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, Janice L. Thompson, Office of the Sol., U.S. Dept. of Labor, Cleveland, OH, for respondent.

Before: MARTIN, SILER, and BATCHELDER, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Trinity Industries, Inc. appeals an order of the Occupational Safety and Health Review Commission affirming an administrative law judge's decision to deny Trinity's motion to suppress evidence. For the following reasons, we enforce the order of the Commission.

**I**

The facts, which are essentially undisputed, and the procedural history of this matter have already been set forth comprehensively in the Commission's order. *See Secretary of Labor v. Trinity Industries, Inc.*, 15 O.S.H.Cas. (BNA) 1827 (Rev.Comm.1992). Nevertheless, we summarize some of the background in order to answer the issues raised by the parties before us.

Trinity Industries manufactures tanks and what are referred to as pressure vessels at its plant in Sharonville, Ohio. On February 23, 1988, a Trinity employee filed a formal complaint with the Occupational Safety and Health Administration, alleging that portable grinders and rollers used in the plant were improperly wired, that compressed gas cylinders were unsecured and not fitted with valve protection caps, and that oil-slick floors and stored materials impeded safe access to workplace aisles and passageways. After Trinity refused to grant OSHA permission to inspect the facility, the agency sought an administrative inspection warrant from a federal magistrate judge.[1] In its warrant application, OSHA explained that the employee complaint it had received met the formality requirements of Section 8(f)(1), 29 U.S.C. § 657(f)(1), of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678, and that a special inspection was required under the terms of that section of the Act.

In the same warrant application, OSHA also sought conditional authorization to conduct a full-scope ("comprehensive" or "wall-to-wall") inspection of the Trinity worksite pursuant to an administrative plan detailed in OSHA Instruction CPL 2.45A. Under that plan, a facility is subject to a full-scope inspection if: (1) an employee complaint has been filed that sets forth reasonable grounds for the Secretary of Labor to believe that a violation or danger exists; (2) the establishment is in an industry with a high lost workdays injury rate; (3) a complete safety inspection of the facility has not been carried

1. Section 8 of the Occupational Safety and Health Act of 1970 generally empowers the Secretary of Labor to inspect workplaces. 29 U.S.C. § 657. Because the Secretary of Labor's responsibilities under the Act have been delegated to the Assistant Secretary for Occupational Safety and Health—who heads the Occupational Safety and Health Administration—we employ the terms "Secretary" and "OSHA" interchangeably for the purposes of this opinion.

out in the current year or in the last two fiscal years; and (4) the facility's safety records show a lost workday injury rate at or above the national average. Trinity's Sharonville worksite, OSHA maintained, met the first three of these four conditions. Accordingly, the Secretary sought authorization to review Trinity's safety and health records to determine whether the facility also met the remaining condition: that the establishment had a lost workday injury rate at or above the national average. If so, OSHA proposed to conduct a full-scope inspection of the worksite.

On February 25, the magistrate issued a warrant granting the agency the authority to conduct a limited "special inspection" of Trinity's Sharonville facility focusing on the allegations of the employee complaint, a review of the facility's injury and illness records, and a full-scope establishment inspection if the facility's lost workday injury rate met or exceeded 4.2, the Bureau of Labor Statistics National Average for manufacturing. Arguing in part that the Secretary's use of OSHA Instruction CPL 2.45A to expand a complaint inspection under Section 8(f) into a comprehensive facility inspection under Section 8(a) did not comport with the rule established in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), Trinity filed a motion to quash the warrant. On July 29, the magistrate denied the motion, but stayed the provisions of the warrant allowing OSHA to conduct a records review and authorizing OSHA to conduct a comprehensive inspection. On August 5 and 8, OSHA conducted the limited-complaint inspection of Trinity's Sharonville facility, and subsequently issued citations to Trinity for specific alleged violations of OSHA standards.

On October 20, the district court affirmed the magistrate's order denying Trinity's motion to quash the warrant. On April 25, 1989, this Court denied an application by Trinity for a stay of the district court's order. Shortly thereafter, Trinity agreed to allow OSHA to review the company's safety and health records, and to conduct a comprehensive inspection if the records revealed an establishment lost workday injury rate of 4.2 or more. After calculating a lost workday injury rate of 13.6, OSHA safety specialists and industrial hygienists undertook two concurrent but independent comprehensive inspections of the Sharonville facility. Their recommendations resulted in the issuance of one set of health citations and one set of safety citations. Trinity challenged these citations in two separate administrative actions. Altogether, OSHA issued, and Trinity contested, five citations that alleged numerous violations of the Act. The penalties proposed by OSHA totaled almost $33,000.

On January 20, 1990, an administrative law judge granted a motion by the Secretary to consolidate Trinity's two actions challenging the citations, and denied a motion by Trinity to suppress the evidence obtained by OSHA in its full-scope investigation. In denying the latter motion, the administrative law judge rejected Trinity's argument that the February 25, 1988, warrant was overly broad because it authorized a wall-to-wall inspection based on a limited employee complaint. Following a hearing on the merits of the contested citation items, at which Trinity chose not to appear, the judge upheld each of the alleged violations in the two consolidated cases (with the exception of a single vacated subitem and a corresponding $100 penalty reduction) and assessed the proposed penalties.

Thereafter, Trinity sought and obtained review by the Occupational Safety and Health Review Commission on the sole issue of whether the administrative law judge erred in denying Trinity's pre-hearing motion to suppress evidence. In affirming the administrative law judge's ruling, the Commission found that: (1) Trinity was targeted for an expanded, full-scope establishment inspection pursuant to the provisions of an administrative plan detailed in OSHA Instruction CPL 2.45A, and not because of specific evidence of an existing violation; (2) the administrative plan, CPL 2.45A, was derived from neutral criteria; (3) OSHA's warrant application properly established administrative probable cause under the *Barlow's* administrative plan test; (4) the judge's denial of Trinity's motion was not contrary to precedent of the Commission nor those cases reviewed by courts of appeals; and (5) the warrant's records review provision was not

overly broad. Trinity continues to press its objections before us.

## II

Trinity raises four arguments. First, Trinity contends that inspections of employers selected on the basis of specific evidence of existing violations, such as employee complaints, must be limited to the scope of the complaint, whereas inspections of employers selected on the basis of a reasonable administrative plan may be comprehensive in nature. Accordingly, as OSHA initially selected Trinity for inspection solely on the basis of an employee complaint and request for special inspection, pursuant to Section 8(f) of the Act, the warrant issued should have limited the scope of both the physical inspection of the Sharonville worksite and of the records review to the allegations in the complaint. OSHA Instruction CPL 2.45A, Trinity maintains, is merely an improper attempt to expand limited inspections into full-scope inspections. According to Trinity, CPL 2.45A is not a reasonable administrative plan, which would authorize a full-scope search under Section 8(a), because it selects employers for inspection on the basis of employee complaints and thus is not derived from neutral criteria.

Second, Trinity argues that the exclusionary rule should be applied in Occupational Safety and Health Review Commission proceedings. The full-scope inspection of its facility, Trinity maintains, was conducted pursuant to an invalid search warrant and thus violated its Fourth Amendment rights. According to Trinity, the search was overbroad and conducted in an unreasonable manner and thus violated Sections 8(a)(2) and 8(f) of the Act and Trinity's Fifth Amendment rights. Moreover, Trinity contends that a reasonably well-trained OSHA compliance officer could not have relied in objective good faith on the warrant in question. Given the violations of Trinity's constitutional rights and the fact that the good faith exception to the exclusionary rule does not apply, Trinity concludes that the rule should be applied to suppress all the evidence gathered pursuant to the full-scope inspection.

Third, Trinity contends that even if CPL 2.45A is deemed a reasonable administrative plan under the Supreme Court's decision in *Barlow's,* OSHA's warrant application did not adequately describe the plan or how the desired inspection of Trinity's facility fit into that plan. Finally, Trinity argues that even if the description of the plan in the warrant at issue in this case is deemed sufficient, the full-scope search of Trinity's facility still violated the Fourth Amendment because the inspection involved both safety and health components. The application for the warrant, Trinity asserts, provided only that if the conditions of CPL 2.45A were met, the scope of the inspection would extend to the entire establishment with respect to safety. According to Trinity, even if otherwise valid, such a plan could not also authorize a full-scope health inspection.

## III

As this Court held in *National Engineering & Contracting Co. v. OSHA,* 928 F.2d 762, 767 (6th Cir.1991):

> In a case of this kind, a reviewing court's task is limited to determining whether the Commission's factual findings are supported by substantial evidence in the record taken as a whole, 29 U.S.C. § 660(a), and whether its legal conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

Because Trinity appeals from a denial of a motion to suppress, moreover, "we must consider the evidence in the light most favorable to the government." *Id.* at 765. Finally, we note that great deference is due when reviewing a magistrate's determination of probable cause. *United States v. Establishment Inspection of: Jeep Corp.,* 836 F.2d 1026, 1028 (6th Cir.1988).

In considering Trinity's challenge to the scope of the February 25, 1988, warrant, we agree with Trinity's assertion that OSHA Instruction CPL 2.45A, upon which the provision of the warrant authorizing the conditional full-scope inspection was based, does not comport with an established rule of law. *See Barlow's,* 436 U.S. at 320, 98 S.Ct.

at 1824. In *Barlow's*, the Supreme Court held that warrants are required for administrative inspections under the Act. *Id.* at 325, 98 S.Ct. at 1827. The Court also stated that probable cause justifying the issuance of a warrant for administrative purposes may be based either on "specific evidence of an existing violation" or "on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Id.* at 320, 98 S.Ct. at 1824. Expounding on the second basis, the Court noted that a "warrant showing that a specific business has been *chosen* for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources . . . would protect an employer's Fourth Amendment rights." *Id.* at 321, 98 S.Ct. at 1824–25 (emphasis added). Because administrative and legislative guidelines ensure that employers selected for inspection pursuant to neutral administrative plans have not been chosen simply for the purpose of harassment, courts have held that administrative plan searches may properly extend to the entire workplace. *Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1068 (11th Cir.1982). In the case of searches based on employee complaints, however, such safeguards are absent. Given the "increased danger of abuse of discretion and intrusiveness" presented by such searches, we agree with those circuits that have explicitly recognized that "a complaint inspection must bear an appropriate relationship to the violation alleged in the complaint." *Id.* (citing cases).

The flaw in OSHA Instruction CPL 2.45A is that it circumvents the purpose behind the reasonable administrative plan envisioned by the Supreme Court. *Barlow's*, 436 U.S. at 321, 98 S.Ct. at 1824. By allowing an employee complaint to trigger an administrative plan search, OSHA attempts to authorize a full-scope inspection of an employer in the absence of the probable cause showing required by *Barlow's* for such an inspection. *See Sarasota Concrete*, 693 F.2d at 1068 (inspections pursuant to employee complaints require individualized inquiry to ensure that the target of the search was not chosen for the purpose of harassment); *Marshall v. Horn Seed Company*, 647 F.2d 96, 100–101 (10th Cir.1981) (same). In support of CPL 2.45A, OSHA argues that an employee complaint is only one of four conditions that must be satisfied before the Secretary may expand a limited complaint inspection under Section 8(f) into a full-scope inspection under Section 8(a). This argument, however, ignores the primary importance placed by the Court in *Barlow's* on the neutrality of the initial selection process provided by an administrative plan. In short, no matter how objective the other criteria of CPL 2.45A may be, the initiation of a search under the plan hinges on the filing of an employee complaint. Thus, the full-scope inspection authorized by the regulation cannot be the product of the kind of reasonable administrative inspection plan proposed in *Barlow's*.[2] To the extent that OSHA Instruction CPL 2.45A allows the Secretary to conduct a full-scope inspection authorized by a single warrant initially obtained only on the basis of an employee complaint, therefore, the regulation is invalid.

■ Having agreed with Trinity's assertion that the February 25, 1988, warrant invalidly authorized a comprehensive physical inspection of the Sharonville workplace, we disagree with the company's contention that the same warrant improperly authorized OSHA to review all of Trinity's injury and illness records, rather than just those records related to the complaint that triggered the special inspection of the facility. First, as a practical matter, it would be difficult to discern which of these records are and are

---

**2.** We might view the full-scope search of Trinity's Sharonville facility differently if the site had been due for a programmed, wall-to-wall inspection even in the absence of an employee complaint, or if the complaint alleged a hazard that permeated the entire workplace, but neither of these scenarios is the case in the instant matter. *See In the Matter of Inspection of the Workplace Located at 526 Catalan Street*, 741 F.2d 172, 177 (8th Cir.

1984) (upholding a comprehensive search when, among other factors, OSHA would have carried out a programmed search within several months even if an employee complaint had never been filed); *Hern Iron Works, Inc. v. Donovan*, 670 F.2d 838, 841 (9th Cir.) (involving a violation pertaining to the company's ventilation system), *cert. denied*, 459 U.S. 830, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982).

not "related to the complaint." Moreover, contrary to Trinity's assertions, this Court has held only that a warrant that limits an inspection of records to those which were directly related to the purpose of the proposed inspection was not overbroad. *Jeep Corp.,* 836 F.2d at 1028. This does not preclude our holding today that, on the facts of this case, OSHA, having secured a search warrant for a Section 8(f) limited physical inspection of the Sharonville facility, was also authorized to review all of the injury and illness records that Trinity, like all employers, is required to keep and make available for inspection under the Act. In holding that the Secretary, after receiving an employee complaint, could then subpoena records to determine whether a facility's lost workday incidence called for broader inspection of the workplace, the Third Circuit has noted that "[r]equiring that an employer produce for the Secretary's inspection records that by law he must keep for her use is hardly equivalent to undertaking a comprehensive plant inspection." *Dole v. Trinity Industries, Inc.,* 904 F.2d 867, 873 (3rd Cir.), *cert. denied,* 498 U.S. 998, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990). Although the law in this Circuit seems to allow OSHA to use either a warrant *or* an administrative subpoena to inspect a company's injury and illness records, *see McLaughlin v. Kings Island,* 849 F.2d 990, 997 (6th Cir.1988), we agree with the Third Circuit that limiting the scope of a physical inspection of a worksite while also allowing review of all injury and illness records is consistent with the goals and provisions of the Act. *See* 29 U.S.C. § 651 (Occupational Safety and Health Act intended to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources").

■ The proper procedure in cases such as this one, in light of *Barlow's* and those cases decided since, is thus for the Secretary to secure a search warrant limited in scope to the employee complaint that triggers the inspection. If this limited search and a review of the employer's injury and illness records leads the Secretary to suspect that further physical investigation of the worksite is necessary, the Secretary should then apply for a second warrant based on these findings authorizing a full-scope inspection.

■ We turn next to the applicability of the exclusionary rule in Occupational Safety and Health Review Commission proceedings. Initially, we note that by reviewing an appeal from a Commission judge's denial of a motion to suppress evidence without commenting on the applicability of the exclusionary rule, this Court has at least implicitly endorsed use of the rule in such proceedings. *National Eng'g,* 928 F.2d at 765. In addition, the Commission itself has explicitly found that when "the Secretary fails to meet the relaxed standard of administrative probable cause as articulated by the [Supreme] Court in *Barlow's,* the resulting inspection is invalid and [the Commission is] required to exclude the illegally-seized evidence." *Donovan v. Sarasota Concrete Co.,* 9 O.S.H.Cas. (BNA) 1608, 1614 (Rev.Comm.1981), *aff'd,* 693 F.2d 1061 (11th Cir.1982). In response, the Secretary relies on *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1050, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984), in which the Supreme Court found that the likely costs of excluding unlawfully seized evidence in civil deportation hearings outweighed the social benefits, and thus that the exclusionary rule need not apply in such deportation proceedings. Contending that the costs of applying the exclusionary rule in Commission proceedings would likewise consistently outweigh the benefits, the Secretary urges this Court to hold that the exclusionary rule is inapplicable in all OSHA enforcement proceedings. We are not persuaded.

The Fifth Circuit specifically has addressed the effect of *Lopez–Mendoza* on the applicability, and proper scope, of the exclusionary rule in Commission proceedings. *Smith Steel Casting Co. v. Brock,* 800 F.2d 1329, 1334 (5th Cir.1986). The court's *Smith Steel* opinion succinctly resolves this issue:

> Based on Justice O'Conner's [sic] reasoning [in *Lopez–Mendoza* ], we do not believe that the exclusionary rule should be invoked to prevent the Secretary of Labor from ordering correction of OSHA violations involving unsafe or unhealthy working conditions, even though the evidence

supporting the order was improperly obtained. However, illegally obtained evidence must be excluded for purposes of "punishing the crime," i.e. the exclusionary rule should be applied for purposes of assessing penalties against an employer after the fact for OSHA violations, unless it can be shown that the good faith exception applies to the Secretary's actions. Therefore, we hold pursuant to *Lopez–Mendoza* that the exclusionary rule does not extend to OSHA enforcement actions for purposes of correcting violations of occupational safety and health standards. Further, again under Justice O'Conner's [sic] reasoning in *Lopez–Mendoza,* we hold that the exclusionary rule applies where the object is to assess penalties against the employer for past violations of OSHA regulations, *unless,* under the reasoning announced in [*United States v.*] *Leon*[, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)], the good faith exception can be applied to the Secretary's actions in obtaining the tainted evidence.

*Smith Steel,* 800 F.2d at 1334. We find this conclusion to be well-reasoned and persuasive, and adopt it as this Circuit's rule regarding the applicability of the exclusionary rule to OSHA proceedings.

 As OSHA's object in introducing the evidence gathered in its full-scope inspection of the Sharonville facility was to assess penalties against Trinity for past violations, the exclusionary rule does have potential application in this case. OSHA's warrant application, however, was detailed and factually accurate. Moreover, before conducting a full-scope inspection of the facility, the Secretary obtained decisions from both the magistrate and the district court upholding the warrant, and a decision from this Court denying Trinity's application for a stay. We find, therefore, that the Secretary relied in objectively reasonable good faith on a facially valid warrant in conducting the full-scope inspection of the Sharonville facility, and thus the good faith exception announced in *Leon* to the exclusionary rule applies. *See Leon,* 468 U.S. at 918–920, 104 S.Ct. at 3418–19 (evidence need not be suppressed when obtained by police who act in good faith reliance on a facially valid warrant that is later found to

lack probable cause because suppression in this situation would not further the deterrent function of the exclusionary rule). Accordingly, the Commission did not err in affirming the administrative law judge's decision to deny Trinity's motion to suppress the evidence gathered by OSHA.

 Trinity's third contention is that the Secretary did not adequately describe OSHA Instruction CPL 2.45A in the warrant application. Despite our holding that CPL 2.45A is not a reasonable administrative plan under *Barlow's,* we conclude that the Secretary sufficiently described CPL 2.45A, and how the desired inspection of Trinity's facility fit into that plan, so as not to upset our finding that the Secretary acted in objectively reasonable good faith in securing and executing the February 25, 1988, warrant.

 Trinity's final contention is that OSHA's full-scope search of the Sharonville facility, which was conducted pursuant to a warrant that only authorized a comprehensive safety inspection, involved both safety *and* health components, and thus violated Trinity's Fourth Amendment rights. We agree that probable cause for a full-scope safety inspection is not the equivalent of probable cause for a full-scope health inspection, and that warrants should specify the precise nature of the Secretary's proposed search. *Cf. Donovan v. Wollaston Alloys, Inc.,* 695 F.2d 1, 7 (1st Cir.1982) (suggesting that a warrant obtained pursuant to program confined to safety inspections that nonetheless authorized safety and health inspections could be overbroad). Again, however, we find that, on the facts of this case, OSHA executed its full-scope inspection of the Sharonville facility in a manner that the agency believed in objectively reasonable good faith to be authorized by the facially valid warrant it had obtained.

## IV

For the foregoing reasons, the decision of the Occupational Safety and Health Review Commission is affirmed.

BATCHELDER, Circuit Judge, concurring.

I agree completely with the majority opinion in this case, and I write separately simply to emphasize (1) that the court has invalidated OSHA Instruction CPL 2.45A because it does not comport with the requirements of *Marshall v. Barlow's, Inc.*, (2) why it is necessary for us to hold CPL 2.45A invalid, and (3) what this means for future OSHA inspections and searches.

The relevant language from *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), is as follows:

> Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S. [523, 538, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967)]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.

*Barlow's*, 436 U.S. at 320–21, 98 S.Ct. at 1824–25 (footnote omitted). The Court also wrote, "A warrant ... would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Id.* at 323, 98 S.Ct. at 1826.

We have invalidated CPL 2.45A because it uses an employee's complaint as a component to trigger a full-scope search of the workplace.[3] This element involves human action and thus brings the potential to add a subjective input to the calculus. Trinity argues, and we agree, that the addition of this element destroys the neutrality of the administrative inspection plan and violates *Barlow's*; when *Barlow's* discussed permissible administrative plans, it described a neutral plan as one that relied upon either random selection or selection by relevant statistics that have no individual human component for the reason that searches flowing from these types of plans could not be the product of an agency's arbitrary decision.

OSHA argues that the employee-complaint element is unobjectionable because it does not vest *in the agency* any discretion that might be abused or arbitrarily exercised because all OSHA does when a complaint comes in is verify, pursuant to 29 U.S.C. § 657(f)(1), that the complaint furnishes reasonable grounds to believe that the violation exists. OSHA contends that because it cannot file complaints on its own or otherwise instigate their filing, it therefore cannot produce the harms that *Barlow's* sought to prevent.

The OSHRC agreed with OSHA's position. In upholding the Secretary's administrative plan and the search conducted under it, the OSHRC quoted with approval the following passage from the magistrate judge's opinion:

> In order for the plan to establish probable cause, it must provide for inspection on the basis of neutral criteria, thus ensuring

---

3. Had the policy been limited to the other three elements of CPL 2.45A, there is little doubt we would uphold the search, for these elements present no real difficulty under *Barlow's*. Each is a neutral criterion, not susceptible in any way to administrative discretion or manipulation. Additionally, other circuits have taken this view as well, upholding OSHA plans similar to CPL 2.45A but without the employee-complaint element. *See Donovan v. Trinity Indus., Inc.*, 824 F.2d 634 (8th Cir.1987) (plan ranking companies by lost workday injury (LWDI) rate, number of employees, and name upheld under *Barlow's*);

*Industrial Steel Prods. Co. v. OSHA*, 845 F.2d 1330 (5th Cir.) (inspection plan upheld where plan used LWDI rate ranking, number of employees, type of industry, element of chance, and two cycles of inspections), *cert. denied*, 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988); *United States v. Trinity Indus., Inc.*, 876 F.2d 1485, 1490 n. 3 (11th Cir.1989) (citing cases approving CPL 2.25B and CPL 2.25C, two OSHA policies that use factors such as LWDI rates, number of employees, and locations to select establishments for inspections).

that OSHA officials do not have unbridled discretion to target an employer for improper reasons. Neutrality and discretion are integrally linked; if the evidence submitted in the application shows the plan is based on the type of criteria that does not permit an arbitrary decision to conduct the inspection, then we may find the plan is derived from neutral criteria.

*Secretary of Labor v. Trinity Indus., Inc.,* Nos. 89–2168 & 89–2169, slip op. at 20 (OSHRC Aug. 18, 1992) (citations omitted). The OSHRC went on to reach the same decision as did the magistrate judge and the district court, namely, that because the employee complaint element did not vest in OSHA any discretion, it was a neutral criterion.

We reject this view. As the panel notes, *Barlow's* requires that Trinity have been "chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act *derived from neutral sources.*" 436 U.S. at 321, 98 S.Ct. at 1825 (emphasis added). The issue then is whether a policy that uses an employee complaint as one of four factors that trigger an inspection is a plan "derived from neutral sources." Although I concede that CPL 2.45A has no ability to create the potential for one of the harms that the *Barlow's* Court sought to avoid, namely, the "unbridled discretion [of] executive and administrative officers, particularly those in the field, as to when to search and whom to search," *Barlow's,* 436 U.S. at 323, 98 S.Ct. at 1826, a search has the potential to be just as arbitrary (and possibly more so) when the triggering factor is an employee complaint. The OSHRC held that because the complaint came from outside OSHA, the policy did not violate "the basic purpose of the Fourth Amendment, which is 'to safeguard the privacy and security of individuals against *arbitrary invasions by government officials.'*" OSHRC decision at 15 (quoting *Barlow's,* 436 U.S. at 312, 98 S.Ct. at 1820) (emphasis added by OSHRC). But, the invasion is no less arbitrary simply because the OSHA official himself cannot inject his own arbitrariness into the process. If the employee who files the complaint intends to harass or retaliate against his employer, the full-scope investigation by a government official has been prompted not by neutral factors, but by a person with an improper motive. Unless it can be shown that OSHA officials act from improper motives more often than employees, the harm to be avoided is exactly the same whether the source is an OSHA official or an employee. And the harm would, in fact, be greater if it could be shown that employees more often than OSHA officials act vindictively or unjustifiably.

OSHA attempts to counter this argument by saying that it screens employee complaints to determine whether there are "reasonable grounds to believe that such violation or danger exists," 29 U.S.C. § 657(f)(1); CPL 2.45A, ch. IX, sec. (A)(2)(d), before it seeks a search warrant. However, OSHA must concede that it sometimes is difficult to identify from the face of the complaint whether it is a justifiable or reasonable complaint. And it is at this point that OSHA is vested with some discretion in deciding which complaints provide "reasonable grounds to believe...." This risk of unjustified and overbroad searches based on an employee's complaint is the very reason that searches must be limited to the area about which the employee complains.

It may be true that "[n]eutrality and discretion are integrally linked" as the magistrate and the OSHRC have said, but it is equally true that neutrality and objectivity are integrally linked. Objectivity *may* take the form of a neutral decisionmaker or adjudicator, but in the absence of such a person, objectivity often requires that factors be limited to those that are not subject to human manipulation. Because the employee-complaint element in CPL 2.45A is a subjective element, we hold that this instruction, which permits full-blown inspections triggered in part by an employee complaint, is unconstitutional under *Barlow's* because it violates the company's Fourth Amendment right to be free from unreasonable searches and the right to have the scope of the search bear some relation to the evidence sought.

Finally then, I emphasize that although we ultimately rule that the Secretary was permitted to use the results of the inspection in

this case, since we have held invalid Instruction CPL 2.45A, our decision *prospectively* will result in the suppression of any evidence obtained in a search pursuant to CPL 2.45A (or similar policy), for OSHA investigators in the Sixth Circuit may no longer rely in good faith on a warrant that is issued contrary to the law of this circuit.