Department of Labor v. Sturm          CV-94-373-M    08/04/95 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Robert B. Reich, Secretary of Labor,
United States Department of Labor,
    Plaintiff,

v.                                                    Civil No. 94-373-M

Sturm, Ruger & Co., Inc.,
    Defendant.


O R D E R


    The Secretary of Labor filed suit to enforce an administrative subpoena served upon Defendant, Sturm, Ruger & Co., Inc. (the "Company").  The Company operates a firearms manufacturing plant in New Hampshire.  The subpoena directed the Company to produce records and information related to potential workplace hazards that might be linked to multiple movement disorders, like carpal tunnel syndrome.  Specifically, the Secretary sought to obtain the Company's 1993 "OSHA 200 logs" and first report of injury logs.  It also requested information or records relating to:  (1) employee task completion times; (2) quotas; (3) piece work; (4) incentives; (5) production; (6) the Company's ergonomics-related concerns, committees, and consultants; and (7) employee task variation.

The Company is required by law to maintain only the OSHA 200 logs. Nevertheless, the Secretary claims to be entitled to all of the subpoenaed records and information under the provisions of the Occupational Safety and Health Act of 1970, 29 U.S.C. §651, et seq. (the "Act"). The Company objects to enforcement of the subpoena and moves to vacate an administrative citation and fine which the Secretary imposed for its refusal to produce the Form 200 logs.

On September 1, 1994, the Magistrate Judge (Barry, J.) conducted a hearing on this matter, after which he allowed the parties 15 days to submit additional legal and factual support for their respective positions. On March 13, 1995, the Magistrate Judge issued a Report and Recommendation, recommending that the court deny the Secretary's application for an order enforcing the administrative subpoena. The Secretary filed a timely objection to the Magistrate's Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), the court reviews de novo those portions of the Report and Recommendation to which a party has objected.

2

# Factual Background.

The Magistrate Judge made the following findings of fact, which are well-supported in the record. On November 1, 1992, the New Hampshire OSHA area director developed a Local Emphasis Program for the inspection of industries that experience a high incidence of multiple movement disorders, such as carpal tunnel syndrome and tendinitis. On December 31, 1992, the area director obtained a computer printout from the New Hampshire Bureau of Workers' Compensation detailing first reports of injury/illness. From that data, the area director developed a list of employers who seemed to be experiencing frequent workers' compensation claims based on incidents of multiple movement disorder. The Company had the third highest number of such claims in New Hampshire.

By letter dated August 17, 1993, the area director advised the Company of OSHA's general interest in reducing and/or eliminating ergonomic hazards related to multiple movement disorders. He also informed the Company of New Hampshire's Local Emphasis Plan, and its directive to investigate the significant increase in reports of multiple movement disorders. Finally, he explained how and why the Company's plant had been selected for

3

inspection. On the same day, OSHA Compliance and Health Officer Donald DeWees, who was responding to an earlier employee complaint regarding alleged air quality hazards at the Company's plant, went to the plant to inspect both air quality and ergonomics.

DeWees returned to defendant's plant on November 12, 1993, to inspect the "Checking and Polishing Departments," where employees had sustained a comparatively large number of multiple movement disorders. DeWees asked the Company to provide him with particular information related to that type of injury. On December 20, 1993, representatives of the Company informed DeWees that such information would not be released, and instead referred him to the Company's attorneys. On January 11, 1994, the Secretary issued the administrative subpoena in question, but the Company again refused to produce the requested information and records. On January 19, 1994, the Company's attorney offered, by way of compromise, to produce the requested records and information, provided that OSHA agreed not to use any of it as a basis for an enforcement action against the Company. OSHA rejected the offer and brought suit to enforce the subpoena.

4

The Company argues that the subpoena violates its rights under the Fourth Amendment to be free from unreasonable searches and seizures. The Company claims that the subpoena is unenforceable because it was not issued "for a proper purpose authorized by Congress," United States v. Comley, 890 F.2d 539, 541 (1st Cir. 1989). Finally, it challenges the subpoena on grounds that the Secretary cannot properly subpoena records or information relating to ergonomics because he has not promulgated any health and safety regulations on that subject.

**Discussion.**

I.   Constitutional Law.

In Marshall v. Barlow's, Inc., 436 U.S. 307 (1978), the Supreme Court held that the Fourth Amendment protects commercial buildings as well as private homes from unreasonable searches and seizures. The court also concluded that, despite the broad language of section 8(a) of the Act, the Secretary of Labor could not conduct a warrantless search of Barlow's business. Barlow's, 436 U.S. at 311. The court noted, however, that demonstrating "probable cause" sufficient to support the issuance of a warrant is less burdensome in the administrative inspection context than in the criminal search context.

5

> [The Secretary's] entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]."

Barlow's, 436 U.S. at 320 (quoting Camara v. Municipal Court of San Francisco, 387 U.S. 523, 538 (1967)); see also Brock v. Brooks Woolen Co., 782 F.2d 1066, 1069 (1st Cir. 1986) ("In the case of an administrative search warrant, . . . the probable cause required to secure the warrant is less than that necessary for a criminal warrant.").

However, even the weaker probable cause standard applicable to administrative searches does not govern the issuance of an administrative subpoena. In Donovan v. Lone Steer, Inc., 464 U.S. 408 (1984), the court distinguished prior cases, including Barlow's, and explained that the standard applicable to subpoenas is even less burdensome:

> In each case [i.e., Barlow's, supra, Camara v. Municipal Court, supra, and See v. Seattle, 387 U.S. 541 (1967)], this Court held that an administrative

warrant was required before such a search could be conducted without the consent of the owner of the premises.  It is plain to us that those cases turned upon the effort of the government inspectors to make nonconsensual entries into areas not open to the public.  As we have indicated, no such entry was made by appellants in this case.  Thus the enforceability of the administrative subpoena duces tecum at issue here is governed, not by our decision in Barlow's as the District Court concluded, but rather by our decision in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186 (1946).

Lone Steer, 464 U.S. at 414.  In Oklahoma Press, supra, the court rejected an employer's claim that the subpoena power conferred upon the Secretary of Labor by the FLSA violates the Fourth Amendment:

Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be "particularly described," if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant.  The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.

Oklahoma Press, 327 U.S. at 208.

7

Four years later, the court considered the nature and scope of the Federal Trade Commission's authority to require corporations to file reports showing the extent to which they have complied with the Commission's cease and desist order. United States v. Morton Salt Co., 338 U.S. 632 (1950). Like the Company in this case, the corporations argued that because the Commission had not alleged a violation of its order or of any relevant statute, its document request constituted nothing more than a "fishing expedition," designed to uncover evidence of guilt. The court rejected that argument:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

Morton Salt, 338 U.S. at 642-43. The court did acknowledge some limits on an administrative agency's investigatory powers, but still made it clear that those powers are far-reaching:

8

> Of course a governmental investigation into corporate
> matters may be of such a sweeping nature and so
> unrelated to the matter properly under inquiry as to
> exceed the investigatory power. But it is sufficient
> if the inquiry is within the authority of the agency,
> the demand is not too indefinite and the information
> sought is reasonably relevant. "The gist of the
> protection is in the requirement, expressed in terms,
> that the disclosure sought shall not be unreasonable."

Morton Salt, 338 U.S. at 652-53 (quoting Oklahoma Press Pub. Co.
v. Walling, 327 U.S. 186, 208 (1946)).


The Supreme Court's rulings in this area seem to yield the following maxim: an administrative subpoena is "reasonable" and, therefore, enforceable if it is issued for a proper purpose authorized by Congress, the information sought is relevant to that purpose and adequately described, and statutory procedures governing its issuance are followed. United States v. Comley, 890 F.2d 539, 541 (1st Cir. 1989). The scope of this court's review of the reasonableness of an administrative subpoena is quite limited:

> The role of a court in a subpoena enforcement
> proceeding is strictly limited to inquiring whether the
> above requirements have been met. "Such proceedings
> are designed to be summary in nature. As long as the
> investigation is within the agency's authority, the
> subpoena is not too indefinite, and the information
> sought is reasonably relevant, the district court must
> enforce an administrative subpoena."

9

Comley, 890 F.2d at 541 (quoting EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)).

II. The Occupational Safety and Health Act of 1970.

Congress enacted the Occupational Safety and Health Act of 1970 in an effort, "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. §651(b). Consistent with that purpose, section 5(a) of the Act, 29 U.S.C. §654(a), mandates that:

> Each employer (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; (2) shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

29 U.S.C. §654(a). Under this provision, an employer has two distinct legal obligations. Employers are required under section 5(a)(1) of the Act to provide a working environment free from recognized health and safety hazards, and they are required under section 5(a)(2) of the Act to comply with all pertinent standards promulgated by OSHA. Failure to comply with either of these

10

duties constitutes a violation of the Act.  <u>Cape & Vineyard Div.</u>
<u>of New Bedford Gas v. Occupational Safety and Health Review Com.</u>,
512 F.2d 1148, 1150 (1st Cir. 1975).  Because OSHA has not yet
promulgated any safety and health regulation(s) regarding
ergonomics, legal authority for the Secretary's inquiry into
ergonomic conditions at the Company's facility is necessarily
derived from section 5(a)(1) of the Act, the so-called "general
duty clause."

Section 8(a) of the Act, 29 U.S.C. §657(a), empowers the
Secretary to inspect and investigate workplaces in order to carry
out the purposes of the Act.  Section 8(b) of the Act, 29 U.S.C.
§657(b), empowers the Secretary, in the course of conducting such
inspections and investigations, to require the attendance and
testimony of witnesses and the production of evidence under oath.
It also authorizes the Secretary to subpoena records maintained
by an employer.  The parties do not dispute that OSHA may
investigate potential general duty clause violations alleged in
an employee's complaint.  <u>See</u> 29 U.S.C. §657(f).  The questions
presented here are: (1) whether OSHA has the authority to
subpoena documents which relate to <u>potential</u> workplace safety
hazards well beyond the scope of an employee's specific

11

complaint; and (2) whether, independent of any employee complaints, OSHA may subpoena documents as part of an investigation into potential general duty clause violations, whose existence is suggested only by data developed by a state agency.

    A.    Employee Complaint Investigations.

    The Secretary may conduct two types of administrative inspections: programmed and unprogrammed.  See generally, In re Samsonite Corp., 756 F.Supp. 498, 499 (D.Colo. 1991).  Programmed inspections are conducted as part of a comprehensive enforcement scheme.  Under a programmed inspection, an employer is randomly selected for inspection based upon neutral criteria. Unprogrammed inspections are triggered by specific evidence of potential violations of the Act, such as an employee complaint.

    In this case, the Secretary initiated an unprogrammed investigation of the Company in response to an employee complaint related to air quality.  The circuits are divided as to the permissible scope of administrative searches or inspections conducted in response to employee complaints.  Compare Donovan v. Sarasota Concrete Co., 693 F.2d 1061 (11th Cir. 1982) (holding

12

that a search conducted following an employee complaint must bear an appropriate relationship to the violation alleged in the complaint); Marshall v. Horn Seed Co., 647 F.2d 96 (10th Cir. 1981) (same); Marshall v. North American Car Co., 626 F.2d 320 (3rd Cir. 1980) (same); Marshall v. Central Mine Equipment Co., 608 F.2d 719 (8th Cir. 1979) (same) with Hern Iron works, Inc. v. Donovan, 670 F.2d 838 (9th Cir.) (warrant authorizing inspection of entire plant in response to employee complaint not unreasonable), cert. denied, 459 U.S. 830 (1982); Burkart Randall Division of Textron, Inc. v. Marshall, 625 F.2d 1313 (7th Cir. 1980) (inspection in response to employee complaints need not be limited in scope to substance of those complaints). See also 29 CFR §1903.11 ("Inspections under this section shall not be limited to matters referred to in the complaint"). But in this case, the court is concerned with the permissible scope of an administrative subpoena issued in response to an employee complaint, not a search warrant.

For the reasons given in Dole v. Trinity Industries, Inc., 904 F.2d 867 (3rd Cir.), cert. denied, 498 U.S. 998 (1990), the court finds that an administrative subpoena need not be limited to materials directly relevant to the investigation of an

13

employee's complaint.  In <u>Trinity Industries</u>, OSHA responded to an employee complaint alleging that non-production employees were not provided with hard hats and safety glasses when walking through work areas.  OSHA obtained a warrant authorizing an inspection of the plant, limited to the conditions described in the employee complaint.  The warrant also authorized OSHA to inspect and copy certain records which the employer was required to maintain.  When the employer refused to honor the warrant, OSHA issued an administrative citation and served an administrative subpoena, seeking both the information referenced in the warrant and additional documents.  The employer refused to honor the subpoena and OSHA filed a petition to enforce it.

On appeal to the Court of Appeals for the Third Circuit, the Secretary argued that the district court erred in limiting enforcement of the subpoena to those records related to the conditions described in the employee's complaint.  Finding that the district court should not have limited the scope of the subpoena, the court pointed out that the subpoena met the requirements set forth in <u>United States v. Morton Salt Co.</u>, <u>supra</u>, that is:  (1) the inquiry was within the authority of the agency; (2) the demand for production was not too indefinite; and

14

(3) the information sought was reasonably relevant to the inquiry

the Secretary was authorized to conduct:

> These subpoenas were issued in connection with a
> limited workplace inspection following an employee
> complaint, but the information they seek does not have
> to be relevant to that particular inquiry in order to
> justify full enforcement.  It is enough that the
> information sought is relevant to _any_ inquiry that the
> Secretary is authorized by law to undertake.  She is
> authorized to review the occupational health and safety
> records that employers are required to keep by the Act
> for her use, and the fact that she chooses to do so
> following an employee complaint does not diminish her
> power to subpoena the records that she requires.

Dole v. Trinity Industries, 904 F.2d at 874 (emphasis added).[1]

The Court of Appeals for the Sixth Circuit recently followed suit

in Trinity Industries v. OSHRC, 16 F.3d 1455 (6th Cir. 1994):

---

[1]  Although the facts presented in Dole v. Trinity
Industries, Inc., supra, are distinguishable from those presented
here, the distinctions are not material.  In Trinity Industries,
the Secretary sought information necessary to calculate the
employer's lost workday incidence ("LWDI").  If the LWDI was
above the industry average, OSHA's internal handbook required the
Secretary to expand the scope of the investigation beyond the
allegations contained in the employee complaint.  Here, the
Secretary seeks to expand his investigation beyond the
allegations contained in the employee's air quality complaint to
determine whether the Company is complying with the duties
imposed by section 5(a)(1), the general duty clause.  A number of
courts presented with this issue have held that such an augmented
document review is within the Secretary's authority.  See, e.g.,
Reich v. Montana Sulphur & Chemical Co., 32 F.3d 440, 445-46 (9th
Cir. 1994), cert. denied, 1995 U.S. LEXIS 2002, 63 U.S.L.W. 3689
(U.S. 1995); Trinity Industries v. OSHRC, 16 F.3d 1455, 1460-61
(6th Cir. 1994).

15

> Although the law in this Circuit seems to allow OSHA to use either a warrant or an administrative subpoena to inspect a company's injury and illness records, we agree with the Third Circuit that limiting the scope of a physical inspection of a worksite while also allowing review of all injury and illness records is consistent with the goals and provisions of the Act.

Trinity Industries v. OSHRC, 16 F.3d at 1461. Accordingly, the Secretary's demand, through subpoena, for records the Company is required to maintain by the Act for his use was proper and is enforceable.

In addition to documents which the Company is required by law to maintain, here the Secretary also seeks documents which the Company is not required to maintain. With regard to those documents, the court finds that the Secretary's subpoena was also reasonable and constitutionally sound. In Donovan v. Union Packing Co., 714 F.2d 838 (8th Cir. 1983), the Court of Appeals for the Eight Circuit reached a similar conclusion, holding:

> Disclosure of forms required by [the Act] and of several other standard records through the enforcement of the Secretary's subpoena power is hardly unreasonable. As the district court in Marshall v. Olean Title Co., 489 F.Supp. 32 (E.D.Pa.), aff'd 636 F.2d 1209 (3d Cir. 1980), noted, "[t]he varied responsibilities delegated to the Secretary define the breadth of his subpoena power." 489 F.Supp. at 34. The Secretary is not only authorized to conduct full-

16

> scale investigations to ensure compliance with OSHA, he
> is also authorized to conduct more limited preliminary
> investigations to determine if a company meets the
> criteria established for a programmed inspection;
> criteria which, if met, suggest that further
> investigation may reveal violations of OSHA law.

Union Packing, Co., 714 F.2d at 842 (emphasis added).


"Reasonableness" remains the standard against which the Secretary's subpoena must be measured. Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208 (1946); See v. Seattle, 387 U.S. 541, 544 (1967); United States v. Comley, 890 F.2d 539, 541 (1st Cir. 1989); see also Martin v. Gard, 811 F.Supp. 616, 620 (D.Kan. 1993) ("In an action to enforce an administrative subpoena, judicial review is limited and conducted summarily . . . . The gist of this Fourth Amendment protection is reasonableness, in that the subpoena must be `sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.'" (citations omitted)). Accordingly, the danger of abuse and degree of intrusiveness associated with the Secretary's document request must be balanced against the need for inspection.

17

Here, the court is persuaded that, on balance, the circumstances warrant enforcement of the subpoena. Given the strong federal interest in promoting employee health and safety, as well as the data suggestive of a potential relationship between working conditions at the Company and multiple movement disorders experienced by its employees, the Secretary's request for information that might shed some light on possible causes of the injuries was reasonable. The materials sought were well defined, limited in scope, and related to the purpose of the inquiry: to determine if indeed a causal link between injuries and working conditions existed. Compliance should not be unreasonably burdensome in that the Company presumably can easily retrieve and produce the material sought.

B. "Programmed" Inspections.

Approaching the issue from a somewhat different angle yields the same result. As noted above, section 8(a) of the Act authorizes the Secretary to conduct investigations pursuant to an administrative plan.[2] Here, the Secretary based his subpoena of

_____

[2] The Court of Appeals for the Third Circuit recently interpreted the Secretary's investigatory powers under section 8(a) more broadly, holding that they are not necessarily linked to an administrative plan.

18

documents upon just such a plan — the Local Emphasis Program

("LEP") — for the inspection of industries that experience high

rates of multiple movement disorders.  The LEP establishes

procedures for carrying out:

> programmed inspections of targeted establishments from
> a list of referrals obtained from the State of New
> Hampshire's Workers' Compensation records pursuant to
> the provisions contained in the Field Operations Manual
> Ch. 11.E.2.b.4.
>
> * * *
>
> Targeting under the LEP would be accomplished by
> working closely with the State of New Hampshire using
> workers' compensation records and summaries of claims
> involving carpal tunnel syndrome and tendinitis
> compiled by company name over a time period of at least
> a year.  Inspections would be conducted starting with

---

> [N]othing in it or any Supreme Court decision confines
> section 8(a) inspections to programmed inspections pursuant
> to an administrative plan.  The language of section 8(a)
> suggests a broad grant of authority to the Secretary to
> conduct reasonable inspections in that it permits entry to
> any establishment "or other area" to inspect "any such place
> of employment and all pertinent conditions."  29 U.S.C.
> §657(a).  The statute is notably devoid of any requirement
> that inspections be made pursuant to an administrative plan
> or scheme; Congress could have indicated as much if it
> intended this restriction.  In fact, the legislative history
> supports the interpretation that section 8(a) is a broad
> grant of authority to conduct reasonable inspections, in
> contrast to section 8(f)(1), which is not a grant of
> authority but rather imposes a requirement that the
> Secretary inspect under certain circumstances.

Martin v. International Matex Tank Terminals-Bayonne, 928 F.2d
614, 621 (3rd Cir. 1991).

those establishments having the greatest number of claims in that time period. The inspections would be conducted by CSHOs who have completed training in ergonomic problems.

Concord Area Office Notice CPL 2, Local Emphasis Program, Ergonomic, at 1 (Exhibit 1 to the Secretary's Application).

Pursuant to the LEP, OSHA's Area Director, David May, obtained information from the New Hampshire Bureau of Workers' Compensation regarding "first report of injury/illness workers' compensation cases" for the period July 1, 1991, through June 30, 1992. Based upon his review of that and other data, Mr. May made the following conclusions:

1. The Company makes fabricated products, work which is coded under the standard industrial classification ("SIC") as number 34.

2. For fiscal years 1991 and 1992, the combined incidence rate of carpal tunnel syndrome in New Hampshire for SIC 34 was 21.8 injuries per 10,000 person-years.

3. For fiscal years 1991 and 1992, the average incidence rate of carpal tunnel syndrome for New Hampshire employers was 7.8 per 10,000 person-years.

4. Claims filed by employees of the Company constituted approximately one-half of all carpal tunnel syndrome claims filed by employees in SIC 34.

5. The Company had the third largest number of claims in the State of New Hampshire for carpal tunnel syndrome.

20

Affidavit of David May, paras. 3-9. Therefore, May concluded that the Company was part of an industry in which reports of multiple movement disorders were substantially higher than the average for all industries, and that employees of the Company accounted for a sizable portion of those reports. In light of the directive established by the LEP, May concluded that further investigation of the Company was appropriate.

The question presented, then, is whether the data assimilated and analyzed by May was sufficiently neutral to permit issuance of an administrative subpoena consistently with constitutional safeguards. The court concludes that the data was sufficiently neutral, and that enforcement of the subpoena would not run afoul of any constitutional guarantees or protections.

In <u>In re Establishment Inspection of Gilbert & Bennett Mfg. Co.</u>, 589 F.2d 1335 (7th Cir.), <u>cert. denied sum nom.</u>, <u>Chromalloy American Corp., Federal Malleable Div. v. Marshall</u>, 444 U.S. 884 (1979), the Court of Appeals for the Seventh Circuit considered whether a magistrate judge had properly issued an inspection warrant, authorizing OSHA to inspect appellant's foundry. Applying the criteria established in <u>Barlow's</u>, the court

21

concluded that sufficient probable cause existed to justify the issuance of the warrant, the Secretary having adequately demonstrated that he sought the inspection warrant based upon "neutral criteria."

> Paragraph 9 [of the affidavit submitted in support of the warrant] supplied additional pertinent information, namely that the inspection was part of a "National-Local plan designed to achieve significant reduction in the high incidence of occupational injuries and illnesses found in the metal-working and foundry industry."

Gilbert & Bennett Mfg. Co., 589 F.2d at 1342. Explaining why the warrant was properly issued, the court stated:

> Here, although a direct statistical correlation between injury rates and the foundry industry was not presented, the magistrate was entitled to assume, as was Congress in passing the Occupational Safety and Health Act, a direct connection between injuries and violative hazards. Moreover, the magistrate could rely on the known expertise of the Secretary in gathering the statistics in the area of occupational injuries and his ability to form a reasoned opinion that this rate indicated a "high incidence" of injuries in the foundry industry. Not to allow inspections of individual foundries, given such a background, would eviscerate the Act and its purposes. Thus, the instant warrant was plainly supported by probable cause in the Camara/Barlow's sense since Chromalloy was selected for inspection not as the result of the "unbridled discretion" of a field agent, but rather, pursuant to "a National-Local plan" designed by agency officials for the purpose of reducing the high incidence of occupational injuries and illnesses found in the metal-working and foundry industry.

22

<u>Gilbert & Bennett Mfg. Co.</u>, 589 F.2d at 1343.

Although this court is presented with an application to enforce an administrative subpoena rather than a warrant, the reasoning of <u>Gilbert & Bennett Mfg. Co.</u> remains persuasive. The Company was selected for inspection under the criteria established in the LEP, and based upon data collected by the New Hampshire Bureau of Workers' Compensation which suggested that: (1) the Company is a member of an industry in which the rate of multiple movement disorders is significantly higher than average; and (2) the Company itself had a very high incidence of multiple movement disorders. The Company's selection was the product of a systematic, nonarbitrary process, and was not based upon the "unbridled discretion" of a field agent. <u>Donovan v. Hackney, Inc.</u>, 583 F.Supp. 773 (W.D. Okla. 1984), <u>aff'd</u> 769 F.2d 650 (10th Cir. 1985), <u>cert. denied</u> 475 U.S. 1081 (1986); <u>Donovan v. Wollaston Alloys, Inc.</u>, 695 F.2d 1, 5-6 (1st Cir. 1982). "Because [the company's] records were sought based on the neutral criteria that the company was a member of a high hazard industry, the evils the Supreme Court sought to guard against in <u>Barlow's</u> are simply not present." <u>Donovan v. Union Packing Co.</u>, 714 F.2d 838, 841-42 (8th Cir. 1983).

23

Accordingly, the Secretary's subpoena is also enforceable as a reasonable exercise of his investigative powers under section 8(a) of the Act.

III.   The Company's Motion to Vacate.

On July 5, 1994, the Secretary served the Company with a Citation and Notification of Penalty for willfully violating 29 CFR 1904.7 (i.e., refusing to provide the Secretary with the subpoenaed OSHA Form 200's).  The Secretary imposed a penalty of $9,000.00 and informed the Company of its right to contest the citation and penalty.  See 29 U.S.C. §659(a).[3]

---

[3]  In accordance with 29 U.S.C. §659(a), the Citation and Notification of Penalty specifically provided:

**Right to Contest** - You have the right to contest this Citation and Notification of Penalty.  You may contest all citation items or only individual items.  You may also contest proposed penalties and/or abatement dates without contesting the underlying violations.  **Unless you inform the Area Director in writing that you intend to contest the citation(s) and/or proposed penalty(ies) within 15 working days after receipt, the citation(s) and the proposed penalty(ies) will become a final order of the Occupational Safety and Health Review Commission and may not be reviewed by any court or agency.**

Id. at 2 (emphasis in original).

The Company claims that, "[t]he Fourth Amendment prohibits issuance of a citation against an employer for refusal to produce such records unless and until OSHA has first obtained an enforcement order or warrant from a court of appropriate jurisdiction, and no such order has been issued." Defendant's Motion to Vacate Citation at 1. The Secretary responds that this court lacks jurisdiction to address the merits of the Company's motion because the Company failed to exhaust its administrative remedies.

The Act establishes the Occupational Safety and Health Review Commission (the "Commission") to resolve administrative disputes arising under the Act. 29 U.S.C. §§651(b)(3) and 661. The Commission is empowered to hear and resolve challenges to enforcement actions commenced by the Secretary. 29 U.S.C. §§651(b)(3), 659(a) and (c). Decisions of the Commission are subject to review by the court of appeals for the circuit in which the violation is alleged to have occurred. 29 U.S.C. §660(a).

The Company relies upon <u>Brock v. Emerson Elec. Co.,</u>

<u>Electronic & Space Div.</u>, 834 F.2d 994 (11th Cir. 1987) for the

proposition that:

> under the Fourth Amendment, an employer may require
> OSHA to issue a subpoena and may seek judicial
> involvement by refusing to honor the subpoena prior to
> its judicial enforcement.  The employer may not be
> given a citation for asserting this constitutional
> right.

<u>Id</u>. at 997.  The Company argues that this court, like the Court

of Appeals for the Eleventh Circuit, should vacate the citation

because the Company was constitutionally entitled to ignore the

subpoena until the Secretary obtained a judicial order of

enforcement.


The validity of the citation is certainly suspect under the

rationale of <u>Emerson Elec. Co.</u>, and at least two Supreme Court

opinions support the Company's basic premise:

> Thus although our cases make it clear that the
> Secretary of Labor may issue an administrative subpoena
> without warrant, they nonetheless provide protection
> for a subpoenaed employer by allowing him to question
> the reasonableness of the subpoena, before suffering
> any penalties for refusing to comply with it, by
> raising objections in an action in district court.

<u>Donovan v. Lone Steer, Inc.</u>, <u>supra</u>, at 415; citing <u>See v. City of Seattle</u> <u>supra</u> at 544-545 (". . . the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.")

But exclusive jurisdiction over defendant's challenge to the citation's validity has been conferred, at least in the first instance, upon the Commission, and then the courts of appeals. 29 U.S.C. §§659(c) and 660(a). Of course <u>Emerson Elec. Co.</u> might be distinguishable in that the employer in that case properly challenged the citation by giving the Secretary notice of its intent to contest, litigating the matter before an administrative law judge, and properly invoking judicial review in the court of appeals. Here, however, the Company apparently failed to give timely notice of its intent to contest the citation, and did not seek review in the court of appeals, thereby rendering the citation "a final order of the Commission not subject to review by any court or agency." 29 U.S.C. §659(a). In short, the Company failed to exhaust its administrative remedies and waived its right to contest the citation and penalty. "Where Congress has designated a specific forum for the review of administrative action, that forum is exclusive, and a concerned party must

27

exhaust his administrative remedies prior to seeking relief from the courts." In re Restland Memorial Park, 540 F.2d 626, 628 (3rd Cir. 1976) (citing Whitney Nat'l Bank v. Bank of New Orleans, 379 U.S. 411, 422 (1965)).

While the constitutional basis of the Company's motion to vacate the citation might arguably support some form of collateral attack, it is clear that this court is without jurisdiction to directly review the validity of the now "final order" of the Commission, as the Company's motion to vacate requests. The only controversy properly before this court at this time is the one related to the enforceability of the subpoena issued by the Secretary. See 29 U.S.C. §657(b) (vesting jurisdiction in the district courts to review and enforce subpoenas issued by the Secretary). Accordingly, the Company's motion to vacate the citation and penalty is necessarily denied.

## Conclusion.

For the foregoing reasons, the court holds that the Secretary issued the subpoena for a proper purpose authorized by congress, the information sought is relevant to that purpose and adequately described in the subpoena, and the Secretary followed

28

statutory procedures in issuing the subpoena.  <u>United States v.</u> <u>Comley</u>, 890 F.2d 539, 541 (1st Cir. 1989).  The Secretary's Application for Order Enforcing an Administrative Subpoena (document no. 1) is granted.  The Company's Motion to Vacate Citation (document no. 10) is denied.  The Company's Motion for Reconsideration (document no. 23) is denied.

     SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

August 4, 1995

cc:  David L. Baskin, Esq.
     Gretchen L. Witt, Esq.
     Jeremy Ritzenberg, Esq.