Sturm Ruger v. USA                    CV-98-418-JD  01/22/99

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Sturm Ruger & Company, Inc.

        v.                          Civil No. 98-418-JD

United States of America


O R D E R


On June 30, 1998, The Occupational Safety and Health Administration ("OSHA") applied for and obtained a warrant to search the Pine Tree Castings Division ("Pine Tree") of Sturm Ruger & Company, Inc. ("Sturm Ruger").  In response, Sturm Ruger filed a motion to quash, and the government filed a motion for civil contempt and to show cause.  The Magistrate was designated to review the matter pursuant to 28 U.S.C.A. § 636(b)(1)(B). Before the court now is Sturm Ruger's objection (document no. 25) to the Magistrate's report and recommendation on Sturm Ruger's motion to quash and supplemental amended motion to quash (document nos. 2 and 6) and the government's motion to compel compliance, or, in the alternative, to show cause (document no. 4).


Background

Sturm Ruger is a gun manufacturer with a facility consisting of several buildings located in Newport, New Hampshire.  Its

Standard Industrial Classification (SIC) is "Small Arms," code number 3484. Pine Tree Pine Tree, a division of Sturm Ruger, manufactures steel investment castings. Its SIC is "Steel Investment Foundry," code number 3324. Sturm Ruger employs 1,147 employees, 279 of which are employed in the Pine Tree division.

Pine Tree is located within one of the three buildings of the Sturm Ruger Newport facility. Approximately sixty percent of the castings it manufactures are used in Sturm Ruger guns, while the remaining forty percent of the castings are sold to third parties.

Pursuant to the Occupational Safety and Health Act of 1970, OSHA requires employers to maintain and report certain information on occupational injuries and illnesses. See 29 U.S.C.A. §§ 657, 673 (West 1999). OSHA promulgated a rule pursuant to which it requires employers to report certain data on an annual survey form. See 29 C.F.R. § 1904.17(a).

On April 22, 1997, OSHA requested employee data "from Sturm Ruger & Company, Inc., Pine Tree Castings Division." Sturm Ruger's Supplemental Amended Motion to Quash, Ex. C ("Supp. Mot. to Quash"). The survey sought information from Sturm Ruger's "1996 Log and Summary of Occupational Injuries and Illnesses (OSHA No. 200)." Id. at 3. The SIC identified on the OSHA request was "Small Arms," 3484. The form requested the

2

respondent to "make any necessary changes to your establishment site address and SIC."

The form was completed by an occupational health nurse employed by Sturm Ruger with Lost Work Day Injury and Illness ("LWDII") data specific to Pine Tree rather than Sturm Ruger as a whole. The SIC was changed to "33 - Foundry Castings." On June 15, 1998, OSHA compliance officers Tobey and DeWees arrived at Pine Tree with a letter addressed only to "Sturm Ruger & Co." The OSHA officers, responding to inquiries of Lynn Merrill, Sturm Ruger's Director of Human Resources, indicated that the letter was addressed to Sturm Ruger "in the generic sense," that the inspection was for Pine Tree, and the letter was subsequently changed to read "Sturm Ruger & Company, Inc., Pine Tree Castings Division." Merrill refused to consent to the inspection, after which the OSHA officers indicated that they might seek a warrant for inspection.

On June 30, 1998, OSHA received a warrant to inspect Pine Tree. On July 6, 1998, OSHA officers attempted to execute the warrant but were prevented from doing so by Sturm Ruger employees. On the same day Sturm Ruger filed a motion to quash the search warrant, which it amended on July 22, 1998. The government filed a cross motion for civil contempt and petition to show cause on July 8, 1998. On August 12, 1998, the court

3

denied the government's motion for civil contempt and construed its petition as a request that Sturm Ruger be required to show cause why it should not comply with the inspection warrant.

Pursuant to 28 U.S.C.A. § 636(b)(1)(B), Magistrate Judge James Muirhead was designated to review, and, if necessary, conduct a hearing on Ruger's motion to quash and the government's motion to show cause. On December 8, 1998, the Magistrate issued his report and recommendation, suggesting that the motion to quash and amended supplemental motion to quash be denied, the cross-motion be granted, and Sturm Ruger be ordered to submit to an inspection of Pine Tree in accordance with the warrant. On December 28, 1998, Sturm Ruger filed its objections to the Magistrate's report and recommendation.

<u>Standard of Review</u>

28 U.S.C.A. § 636 (b)(1)(C) provides:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

Sturm Ruger argues that the Magistrate erred, <u>inter alia</u>, by: (1) deferring to OSHA's interpretation of its regulations as the interpretation is contrary to the plain meaning of the

4

regulation; (2) deferring to OSHA's finding that Pine Tree was an establishment; (3) concluding that OSHA's Interim Plan is constitutional under the Fourth Amendment; and (4) finding that the Interim Plan's "wall-to-wall" search is constitutional.

## A.    Regulatory Authority

As discussed in greater detail, supra, pursuant to 29 C.F.R. § 1904.17(a), OSHA obtained employee information from Pine Tree as an establishment. This information included, among other things, LWDII data for the Pine Tree Division of Sturm Ruger as distinguished from such data for Sturm Ruger as a whole. On such information Pine Tree was selected for inspection. OSHA then used the information as the basis for its application for the warrant at issue.

Sturm Ruger contests the meaning and scope of the regulation. It argues the plain meaning of the regulation clearly provides that OSHA can only require employers to submit employee information on an employer-wide basis, not a per establishment basis. Because the regulation does not address the specific issue and the court concludes that OSHA's interpretation is reasonable and not contrary to the plain meaning of the regulation, the court concurs with the Magistrate's report and recommendation in this regard.

5

The Supreme Court has stated that "'an agency's construction of its own regulations is entitled to substantial deference.'" Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 152 (1991) (quoting Lyng v. Payne, 476 U.S. 926, 939 (1986). Where the meaning of regulatory language is subject to doubt, "the reviewing court should give effect to the agency's interpretation so long as it is reasonable . . . that is, so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations.'" Martin, 499 U.S. at 150-51 (quoting Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc., 423 U.S. 12, 15 (1975)). Therefore, a reviewing court "must defer to the Secretary's interpretation unless 'an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).

The warrant at issue in this case was based on data OSHA collected pursuant to 29 C.F.R. § 1904.17(a). The regulation provides that:

> (a) Each employer shall, upon receipt of OSHA's Annual Survey Form, report to OSHA or OSHA's designee the number of workers it employed and number of hours worked by its employees for periods designated in the Survey Form and such information as OSHA may request from records required to be created and maintained

6

pursuant to 29 CFR part 1904.

29 C.F.R. § 1904.17(a) (1998). The plain language of section 1904.17(a) therefore does not state on what basis, per employer or per establishment, such information is to be provided. The use of the term "employer" devolves a duty on the employer to provide certain information. However, it is unclear whether it also identifies on what basis the information is to be compiled and provided. Contrary to Sturm Ruger's assertion, the ambiguity in the language lays the groundwork, if appropriate, for deference to OSHA's interpretation in this regard.

Under section 1904.17(a) Sturm Ruger could be required to provide any information it created and maintained under other provisions of part 1904. This, along with its location in part 1904, supports reading section 1904.17 contextually. A contextual reading supports the finding that OSHA's interpretation is reasonable.

Part 1904 as a whole provides for information to be compiled, maintained, and provided largely on a per establishment basis. For example, 29 C.F.R. § 1904.2(a)(1) provides that an employer shall maintain "a log and summary of all recordable occupational injuries and illnesses for [each] establishment." 29 C.F.R. § 1904.2(a)(1) (1998). Similarly, sections 1904.4 and 1904.5 also require information to be compiled and provided on a

7

per establishment basis.  See 29 C.F.R. § 1904.4 (1998) (supplemental record of injury or illness as per each establishment must be available); 29 C.F.R. § 1904.5 (1998) (must post annual summary as per each establishment in each establishment).  Indeed, part 1904 is replete with requirements created on a per establishment basis.  29 C.F.R. § 1904.6 (1998) (must keep per establishment data for five years); and 29 C.F.R. § 1904.7 (1998) (must make per establishment data available to employees and OSHA inspectors).  To be consistent with the rest of the requirements of part 1904, therefore, the information requirements of section 1904.17(a) logically would require information to be provided on a per establishment basis as well.

Similarly, throughout part 1904 the term "employer" is used to devolve on the employer the legal duty to initially compile and provide information.  As discussed above, the term is not used to specify on what basis the information is to be compiled. The use of "employer" in section 1904.17(a) to establish the employers' duty to report information, as opposed to identify on what basis such information should be compiled, is therefore consistent with its use elsewhere in part 1904.

OSHA's interpretation is also consistent with and "sensibly conforms" to the purposes of the regulation.  See Martin, 499 U.S. at 151 (deference due when Secretary's interpretation

8

sensibly conforms to purpose and wording of regulations).

Section 1904.1 states that the purpose of part 1904 is to provide for enforcement of the Act, for record keeping and reporting, and for maintaining a program of collection, compilation, and analysis of occupational health statistics. See 29 C.F.R. § 1904.1 (1998). Uniform compilation of employee statistics at the establishment level advances comparison of establishments within industries and facilitates enforcement of the Act. See also, 29 U.S.C.A. § 651 (1999) (purpose of Act to provide safe and healthful working conditions by providing reporting procedures with respect to occupational safety and health). Moreover, OSHA implied the purpose of section 1904.17 when it stated in the federal register final rule notice that "[s]ection 1904.17 will clarify OSHA's authority to collect establishment-specific data by mail . . . ." 62 Fed Reg. 6434 (Feb. 11, 1997).

OSHA's interpretation is also consistent with its stated intentions when promulgating the regulation, again supporting the conclusion that deference to its interpretation is due. See Thomas Jefferson Univ., 512 U.S. at 512 (deference due unless alternate reading compelled by plain meaning or indication of Secretary's intent during promulgation). As OSHA stated in the preamble to the final rule, it needed establishment-specific data to marshal resources more specifically. See 62 Fed. Reg. 6434,

9

6435 (Feb. 11, 1997) ("OSHA also needs establishment-specific data to better target its program activities, including workplace inspections . . . ."). It also stated that there was no substitute for such site-specific data. See id. at 6437. The court concurs with the Magistrate's conclusion that OSHA's interpretation makes common sense given the objectives of section 1904 and the requirements of part 1904 generally that employers compile and maintain establishment-specific data.

Finally, the court does not find Sturm Ruger's arguments premised on OSHA's earlier proposed regulations compelling. In part driven by an effort to simplify the requirements and eliminate redundancy, OSHA had intended to implement eighteen significant changes. See 61 Fed. Reg. 4030, 4032-33 (Feb. 2, 1996). Among other things, new OSHA forms were to be developed replacing ones that are currently in use. See id. at 4048.

Instead of this broad overhaul, OSHA simply promulgated section 1904.17. In section 1904.17 OSHA intended to "clarify [its] authority to collect establishment specific data by mail for use in agency self evaluation, deployment of agency resources . . . ." 62 Fed. Reg. at 6434. Section 1904.17 as ultimately promulgated varies substantially from its original form as section 1904.13 in the comprehensive overhaul OSHA had initially contemplated. Meanwhile, proposed section 1904.6, on which Sturm

10

Ruger so heavily relies, was not pursued.  Given the drastic

contrast between the initial rules OSHA intended to promulgate

and section 1904.17 as ultimately promulgated, the court finds

the earlier proposed regulations a poor indicator of the meaning

of section 1904.17.  Sturm Ruger's contention that the proposed

regulations undermine section 1904.17's stated purpose is not

well founded.[1]  In any event, as the Magistrate noted, the

failure to promulgate proposed section 1904.6 does not

circumscribe the scope of the annual survey authorized by section

1904.17.

The court concludes that OSHA's interpretation of 29 C.F.R.

§ 1904.17 is reasonable.


B.      The Status of Pine Tree

Sturm Ruger argues that Pine Tree is not an establishment

but rather an integrated part of itself.  As such it contests the

basis for the application of the warrant.  It asserts OSHA never

found Pine Tree to be an establishment, and further, that the

Magistrate erred in deferring to OSHA's interpretation of the

regulation defining an establishment because it is a mixed

---

[1]The court also notes that the language of the proposed
section 1904.6 is similarly ambiguous as to the per employer or
per establishment basis of the information.  61 Fed. Reg. at
4060; see also, id. at 4037 (OSHA explanation referring to "total
hours worked by all employees" and not clarifying the basis).

11

question of law and fact and because OSHA "borrowed" the definition from another agency.[2]  Sturm also contends that deference to Judge McAuliffe's issuance of the warrant was in error.[3]  The Magistrate concluded that, giving deference to both OSHA's interpretation of its own regulations and to Judge McAuliffe's issuance of the warrant, Pine Tree was indeed an establishment for purposes of 29 C.F.R. § 1904.

Both parties cite United States v. Sawyer, 144 F.3d 191 (1st Cir. 1998) as controlling the court's review of the issuance of the warrant.  Sawyer provides:

> Whether "a given set of facts constituted probable cause[] is a question of law subject to de novo review," United States v. Khounsavanh, 113 F.3d 279, 282 (1st Cir.1997), while a district court's findings with respect to the facts leading to the search must be upheld unless they are clearly erroneous, id.  A reviewing court must give "great deference" to a magistrate's assessment of the facts and inferences

[2]The court deems Sturm Ruger's contention that OSHA did not find Pine Tree to be an establishment without merit.  The record indicates that OSHA found Pine Tree to be an establishment for purposes of the regulations.  See Application for Inspection Warrant under the Occupational Safety and Health Act, Tobey affidavit, at 3 ("OSHA maintains that while Pine Tree Castings is not separately incorporated from Sturm Ruger, it is a separate establishment for purposes of SIC code assignment.").  The conclusion regarding OSHA's finding is also supported by OSHA's general treatment of Pine Tree throughout this matter.

[3]Sturm Ruger contends that deference to Judge McAuliffe is unwarranted as there are no facts to be inferred in the warrant application.  As is evident from the court's discussion the court disagrees with Sturm Ruger and finds there are such inferences at issue here.

> supporting the affidavit, however, "reversing only if
> there is no 'substantial basis for ... conclud[ing]'
> that probable cause existed." United States v.
> Procopio, 88 F.3d 21, 25 (1st Cir.1996) (citations
> omitted).

144 F.3d 191, 193 (1st Cir. 1998). The First Circuit has

directed reviewing courts to "examine the affidavit in practical

common sense fashion, and []accord considerable deference to

reasonable inferences the [issuing judge] may have drawn from the

attested facts." United States v. Zayas-Diaz, 95 F.3d 105, 111

(1st Cir. 1996) (citations and quotations omitted).

Pursuant to OSHA regulation 29 C.F.R. § 1904.12(g)(1)

(1998), an establishment is:

> A single physical location where business is conducted
> or where services or industrial operations are
> performed. (For example: A factory, mill, store,
> hotel, restaurant, movie theater, farm, ranch, bank,
> sales office, warehouse, or central administrative
> office.) Where distinctly separate activities are
> performed at a single physical location (such as
> contract construction activities operated from the same
> physical location as a lumber yard), each activity
> shall be treated as a separate establishment.

Sturm Ruger contends no deference is due to OSHA's conclusion

that Pine Tree Castings is an establishment because OSHA went

beyond its own regulations in forming its conclusion, drawing

from the Office of Management and Budget, Standard Industrial

Classification Manual (1987) ("SIC Manual").[4]  Sturm Ruger relies

_____

    [4]The definition of "establishment" in the SIC Manual
differs, among other things, by continuing where the OSHA

13

upon <u>Perry v. Martin Marietta Corp.</u>, 47 F.3d 1134, 1137 (Fed. Cir. 1995), which cites <u>Newport News Shipbuilding and Dry Dock v. Garrett</u>, 6 F.3d 1547, 1551 (Fed. Cir. 1993).

To the extent that OSHA interpreted 29 C.F.R. § 1904.12(g)(1), a regulation it promulgated, for the definition of establishment, the present case is distinguishable from the authority upon which Sturm Ruger relies. <u>See</u> <u>Perry</u>, 47 F.3d at 1137 (no deference because regulation not regulations of Department); <u>Newport News</u>, 6 F.3d at 1551 (regulation at dispute not Navy regulation and Navy issued no implementing or supplementing regulation). However, given the recitation of facts in the warrant application, it is at best unclear whether OSHA was relying solely on its own regulations or whether it was considering sections of the <u>SIC Manual</u> definition that were omitted from the OSHA definition.

The court does not understand OSHA to argue that its

---

regulation terminates, further providing that a separate establishment exists where:

> (1) no one industry description in the classification includes such combined activities; (2) the employment in each such economic activity is significant; and (3) separate reports can be prepared on the number of employees, their wages and salaries, sales or receipts, and other types of establishment data.

Office of Management and Budget, <u>Standard Industrial Classification Manual</u> (1987), <u>available in</u> Westlaw, SIC Database, SIC Manual Intro, at *1.

interpretation of its definition of "establishment" in 29 C.F.R. §§ 1904.12(g)(1) or 1903.2(b) embraces the three factor test of the SIC Manual. Instead, in its most direct treatment of the matter in the record, OSHA simply identifies its use of SIC codes generally, and then states "[a]ccording to the SIC manual, where multiple economic activities are performed at a single location, each activity is treated as a separate establishment if: 1) [the SIC Manual factors]." Gov't Pet. for Adjudication of Civil Contempt and Order to Show Cause, Ex. C. As OSHA's regulations omit the three factor test of the SIC Manual and OSHA has not clearly argued that its interpretation of its regulations embraces the three factor test of the SIC Manual, under de novo review the court examines the regulations without deference.

The OSHA regulations provide that an establishment is: (1) a single physical location; (2) where business is conducted or where services or industrial operations are performed. See 29 C.F.R. § 1904.12(g)(1); 29 C.F.R. § 1903.2(b). Where distinctly separate activities are performed at a single location, each activity is an establishment. Id. The affidavit before Judge McAuliffe stated that Pine Tree was located at the Sturm Ruger facility at 411 Sunapee Street, Newport, New Hampshire. Roughly two hundred eighty people were employed within Pine Tree, where they manufactured steel investment castings. Pine Tree was

15

ascribed its own SIC code for this activity. Pine Tree supplied its product to Sturm Ruger as well as to other unrelated customers across the country. Finally, during a previous inspection of Sturm Ruger, Sturm Ruger maintained that Pine Tree was a separate entity. A reasonable inference is that no other activities were conducted in the Pine Tree castings division, and that Pine Tree's activities were distinctly separate from the rest of Sturm Ruger. Under OSHA's regulations, therefore, Pine Tree is properly considered an establishment.

Sturm Ruger argues that Pine Tree's activities are not distinct and separate, such as a gun manufacturing facility is from an ice cream parlor. In support of its position, Sturm Ruger cites the three factor test in the SIC Manual, which states in part that a separate establishment exists where "no one industry description in the classification includes such combined activities," and further quotes the SIC Manual as follows:

> Iron and steel castings are made, to a considerable extent, by establishments that are classified in other industries and that operate foundry departments for the

production of castings for incorporation, in the same establishment . . . .

SIC Manual at 175.

The court first notes that the relevance of the three factor test to the OSHA description of an establishment is unclear given its omission from the OSHA regulations and OSHA's reliance on it without any foundation. Moreover, the court finds reliance on the passage unpersuasive. Under the facts of this case and as asserted in the warrant application, many of the castings produced by Pine Tree are supplied to third parties, not to Sturm Ruger. The passage Sturm Ruger relies on states that iron and steel foundries, which include steel investment foundries such as Pine Tree, may be subsumed within another establishment and therefore ascribed that other establishment's code where the foundry's product is incorporated into that establishment. See id. In this case, the percent of its product that Pine Tree supplies to third parties is significant enough to compel the conclusion that Pine Tree's castings cannot simply be considered to be incorporated in the same establishment, and its activities are not simply subsidiary to Sturm Ruger's but are of independent economic significance. See Sic Manual, supra note 4, at *1 (establishment is economic unit with distinct and separate economic activities).

Finally, the court finds the present circumstances analogous

17

to the example provided in the OSHA regulations, that of contract construction activities operated from a lumber yard.  <u>See</u> 29 C.F.R. § 1904.12(g)(1).  Pine Tree provides its products both to Sturm Ruger as well as to third parties, in a similar fashion as a lumber yard provides lumber both to the co-located construction entity and to the public.

C.    <u>Fourth Amendment Analysis</u>

Sturm Ruger argues that under the Interim Plan probable cause in the "traditional" sense, the criminal law sense, is required to support the search warrant.  Sturm Ruger does not argue, as it did before the Magistrate, that the Interim Plan is neither general, reasonable, nor neutral.  Moreover, Sturm Ruger does not argue that its selection for inspection was not pursuant to the Interim Plan.  Instead, it argues that the "exception" for the requirement of "traditional" probable cause, as opposed to "administrative" probable cause, as it characterizes the holding of <u>Camara v. Municipal Court</u>, 387 U.S. 523 (1966), is inapplicable in this case because the Interim Plan uses site-specific information, the lack of which allegedly was the basis for the <u>Camara</u> holding.

In <u>Camara</u>, the Supreme Court held that warrantless searches of commercial premises as well as homes are generally

18

unreasonable. See 387 U.S. at 528-529. Camara determined that an area inspection was a reasonable search of private property if done pursuant to a warrant issued with probable cause. Id. at 538. However, the requirement of probable cause was met if reasonable legislative or administrative standards were satisfied with respect to the property to be searched. See id. The Supreme Court stated that

> [s]uch standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g. a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

Id. Acknowledging that the probable cause required in an administrative context therefore varied from the standard used in criminal cases, the Supreme Court stated that "reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." Id. at 539.

The requirement of a warrant to search a private commercial establishment was revisited in Marshal v. Barlow's, Inc., 436 U.S. 307 (1978), in the context of the statute at issue here, the Occupational Safety and Health Act of 1970, 29 U.S.C.A. §§ 651-678. In holding that OSHA was indeed required to obtain a warrant to search the commercial property, the Supreme Court

19

stated that OSHA's

> entitlement to inspect will not depend on [its]
> demonstrating probable cause to believe that conditions
> in violation of OSHA exist on the premises.  Probable
> cause in the criminal law sense is not required.  For
> purposes of an administrative search such as this,
> probable cause justifying the issuance of a warrant may
> be based not only on specific evidence of an existing
> violation but also on a showing that "reasonable
> legislative or administrative standards for conducting
> an . . . inspection are satisfied with respect to a
> particular [establishment]."

Barlow's, 436 U.S. at 320 (quoting Camara, 387 U.S. at 538).  The
Court then stated that a warrant to search a specific business
based upon a general administrative plan for enforcing the Act
derived from neutral sources adequately protected the employer's
Fourth Amendment rights.  Barlow's, 436 U.S. at 321.

Camara and Barlow's therefore establish that the test of
reasonableness is a flexible one, Camara, 387 U.S. at 539, the
inquiry is whether a valid public interest justifies the
intrusion contemplated, id., and the resolution turns on whether
the warrant was issued pursuant to a general administrative plan
derived from neutral sources, Barlow's, 436 U.S. at 321.  As
noted above, Sturm Ruger does not argue before this court that
Pine Tree was not inspected pursuant to an administrative plan
based on neutral criteria.  OSHA has therefore met its burden
under Barlow's of establishing probable cause.  See The
Establishment Inspection of Kelly-Springfield Tire Co. v. Reich,

20

13 F.3d 1160, 1166 (7th Cir. 1994) ("Probable cause may be based on (1) specific evidence of an existing violation or (2) on a showing that the inspection is part of a reasonable legislative or administrative plan.").

The court does not agree that OSHA's site specific information regarding injury rates changes the probable cause showing that Barlow's and Camara require OSHA to establish. First, as indicated by the Court's discussion in Camara, site specific information, such as the nature of a particular building, is anticipated as a basis for a neutral administrative inspection plan. See 387 U.S. at 538. Indeed, the Court specifically stated that an inspection "will not necessarily depend upon specific knowledge of the condition of the particular dwelling." See id.

Second, as the Supreme Court stated in Donovan v. Dewey, 452 U.S. 594, 601 (1981), the warrantless searches in Barlow's were unreasonable because they provided unbridled discretion upon administrative officers as to when and whom to search. See 436 U.S. at 323. Accordingly, the Supreme Court in Barlow's determined that a warrant was required to assure the search was authorized by statute and pursuant to a general, administrative plan based on neutral criteria. If anything, the Interim Plan enhances the reasonableness of the search in this case as it

21

further constrains the discretion of the administrative officials by providing a tighter correlation between the neutral criteria of the administrative plan and the selection of specific entities to be searched.

Finally, the court views OSHA's Interim Plan to be an evolution of the more rudimentary industry wide data collection efforts presented in <u>Donovan V. Wollaston Inc.</u>, 695 F.2d 1 (1st Cir. 1982). The Interim Plan is more advanced as it allows OSHA to identify employers more likely to have violations of OSHA regulations by providing site specific information regarding injuries and illnesses. Raising the probable cause showing OSHA must meet simply because OSHA can now identify within an industry those employers with higher injury rates would be counter to public policy as it would frustrate the efficiency of OSHA operations.

D. <u>Scope of Warrant</u>

Sturm Ruger argues that the scope of the warrant, which authorized a wall-to-wall search, is unconstitutionally broad. It asserts that the nature of the Interim Plan inspection program is similar to an employee complaint inspection as it is based on site-specific information, and therefore the breadth of the search must be warranted by the information obtained.

The court rejects Sturm Ruger's analogy between the Interim Plan inspections and the employee complaint inspection. Trinity Industries, Inc. v. Occupational Safety and Health Review Commission, 16 F.3d 1455 (6th Cir. 1994) ("Trinity"), on which Sturm Ruger relies, distinguished between comprehensive searches pursuant to a neutral administrative plan and searches in response to employee complaints. See id. at 1460. Because legislative and administrative guidelines and the neutrality of the plan ensure that entities selected for inspection have not been chosen simply for harassment, courts have held that administrative plan searches may properly extend to the entire workplace. See id. (citing Donovan v. Sarasota Concrete Co., 693 F.2d 1061, 1068 (11th Cir. 1982)). In contrast, because searches pursuant to employee complaints lack such safeguards, there is an increased danger of intrusiveness and abuse of discretion and "'a complaint inspection must bear an appropriate relationship to the violation alleged in the complaint.'" Id. at 1460 (quoting Donovan, 693 F.2d at 1068).

In its warrant application, OSHA stated that Sturm Ruger, Pine Tree Division, was "chosen for a programmed comprehensive safety and health inspection in accordance with the procedures described [in the Interim Plan]." Warrant Application at 2. The selection was based on objective or neutral selection criteria

23

according to a national scheduling plan. Id. To summarize the application, the plan first identified high hazard industries, and then identified those work-sites within a high hazard industry with LWDII rates above average for that industry. Pine Tree fell into a high hazard industry, and had an above average LWDII rate.

Pine Tree was therefore selected for inspection pursuant to a general administrative plan based on neutral criteria. According to Trinity and Donovan, a comprehensive inspection is proper. See 16 F.3d at 1460; 693 F.2d at 1068. Concerns regarding the elevated potential for abuse of discretion and intrusiveness identified by Trinity are not present. Id. The inspection does not "circumvent the purpose behind the reasonable administrative plan envisioned by the Supreme Court in Barlow's," because it is pursuant to one. Id. (citing 436 U.S. at 321).

Sturm Ruger cites In re Cerro Copper Prods. Co., 752 F.2d 280, 283 (7th Cir. 1985) (quoting Burkart Randall Division of Textron, Inc. v. Marshall, 625 F.2d 1313 (7th Cir. 1980) for the proposition that "[i]f the Secretary chooses to seek . . . a full scale warrant [for an OSHA inspection], there should be some showing by the Secretary as to why such a broad warrant is appropriate in that particular case." The Seventh Circuit found the Secretary had met it obligation by showing: (1) there was no

24

evidence of harassment; (2) the employer was a high hazard workplace in a high hazard industry; (3)there had not been a wall-to-wall search within the previous fiscal year; and (4) OSHA's resources would be conserved by allowing a full scope inspection. The fifth factor relevant, that a programmed inspection was imminent, was not present in that case.

In re Cerro is distinguishable as it presented the situation where OSHA sought a full scale inspection in response to an employee complaint. See id. at 281. In any event, In re Cerro does not support Sturm Ruger's ultimate position that a comprehensive search is inappropriate. Even if the inspection at issue was pursuant to an employee complaint, which it is not, using the factors articulated by the Cerro court, OSHA has shown the scope of the search to be proper. There is no evidence of harassment and Sturm Ruger has not pursued the issue of retaliation in its objections to the Magistrate's report and recommendation. Pine Tree is a high hazard industry with an LWDII rate above the industry average. It is reasonably inferred from the application that a full scale inspection will conserve OSHA's resources, and this inspection in actuality is a programmed inspection.

Sturm Ruger further argues OSHA must examine information contained in OSHA 200 logs to ascertain what injuries existed and

25

what the causes were. OSHA then must allegedly deduce from that information what, if any, OSHA violations exist, and limit the search accordingly. Sturm Ruger apparently bases this assertion on the statement in United States v. Finnigin, 113 F.3d 1182, 1186 (10th Cir. 1997), that "[t]he Fourth Amendment's particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific offense for which there is demonstrated probable cause." However, as discussed above, under the administrative plan there is probable cause to inspect the full work-site. In any event, as the Magistrate noted, the OSHA logs were not before the court in the warrant application, and contrary to Sturm Ruger's contentions, the logs do not provide an adequate basis from which to deduce what specific violations exist.

## Conclusion

In light of the above discussion, the court rejects Sturm Ruger's objections to the Magistrate's report and recommendation. Sturm Ruger's motion to quash and supplemental motion to quash (document nos. 2 & 6) are denied. The Government's motion requesting enforcement of the warrant is granted (document no. 4). Sturm Ruger is hereby ordered to comply promptly with the warrant.

The case is closed subject to its being reopened upon request of either party in the event problems arise in the execution of the warrant.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge


January 22, 1999

cc:   Richard D. Wayne, Esquire
      Patrick M. Walsh, Esquire

27